UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BEFORE: | |
| UNITED STATES,<br><br>         Plaintiff,<br><br>    v.<br><br>ASPECTS FURNITURE MANUFACTURING, INC.; ASPECTS FURNITURE INTERNATIONAL, INC.; HOSPITALITY ENGINEERING SERVICES, INC.; AMY AMPHAY SIVIXAY,<br><br>         Defendants. | **JURY TRIAL DEMANDED**<br><br>Court No. 25-00089 |

# COMPLAINT

Plaintiff, the United States of America, through its undersigned attorneys, alleges as follows:

1. This action is brought against Aspects Furniture Manufacturing, Inc. (AFM), Aspects Furniture International, Inc. (AFI), Hospitality Engineering Services, Inc. (Hospitality), and Amy Amphay Sivixay (Amy Sivixay), hereinafter collectively referred to as Defendants, to recover unpaid antidumping duties and pre-liquidation interest in the amount of $7,673,558.15 owed on 99 entries of wooden bedroom furniture from the People's Republic of China (China), plus additional pre- and post-judgment interest, including but not limited to interest pursuant to 19 U.S.C. § 1505(d).

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1582(3).

## PARTIES

3. Plaintiff is the United States of America.

4.      Defendant AFM is a California corporation with its principal corporate address last identified as 6939 Schaefer Avenue, Suite D #386, Chino, California 91710. AFM was incorporated pursuant to the laws of the State of California on October 16, 2003, and was engaged in the importation of wooden bedroom furniture from China during times relevant to this complaint.

5.      Defendant AFI is a California corporation with its principal corporate address last identified as 15370 Fairfield Ranch Road, Suite C, Chino Hills, California 91709. AFI was incorporated pursuant to the laws of the State of California on September 21, 2012, and was engaged in the importation of wooden bedroom furniture from China during times relevant to this complaint.

6.      Defendant Hospitality is a California corporation with its principal corporate address last identified as 15370 Fairfield Ranch Road, Unit B1, Chino Hills, California 91709. Hospitality was incorporated pursuant to the laws of the State of California on September 19, 2014.

7.      Defendant Amy Sivixay is a natural person who resides in Chino, California and has served as AFM's President, Chief Executive Officer, Chief Financial Officer, Secretary, sole director, and agent for service of process, as well as Hospitality founder, CEO, CFO, Secretary, sole director, and agent for service of process.

## BACKGROUND

8.      Between January 1, 2011, and December 29, 2011, AFM imported wooden bedroom furniture from China through the 45 entries listed in Exhibit A (the Group I Entries).

9. The wooden bedroom furniture in the Group I Entries was subject to antidumping duties pursuant to *Wooden Bedroom Furniture From the People's Republic of China*, 70 Fed. Reg. 329 (Dep't of Commerce Jan. 4, 2005) (antidumping duty order).

10. The exporter of the wooden bedroom furniture for the Group I Entries was Shanghai Maoji Import and Export Corporation Limited (Maoji).

11. At the time of entry, AFM made estimated antidumping duty cash deposits on the Group I Entries at rates of either 6.68 percent *ad valorem* (for entries made on or after August 13, 2011) or 7.24 percent *ad valorem* (for entries made from January 1 to August 12, 2011).

12. The United States Department of Commerce (Commerce) conducted an administrative review of the antidumping duty order for the period of review from January 1, 2011, through December 31, 2011. *See Wooden Bedroom Furniture From the People's Republic of China*, 77 Fed. Reg. 12,235 (Dep't Commerce Feb. 29, 2012) (initiation of admin. review).

13. As part of its review, Commerce selected certain respondents for individual examination. On June 1, 2012, Commerce issued an amendment to its respondent selection memorandum and named exporter Maoji as a mandatory respondent in its review. *See Wooden Bedroom Furniture From the People's Republic of China; 2011*, 78 Fed. Reg. 8,493 (Dep't Commerce Feb. 6, 2013) (prelim. results of antidumping duty admin. review); *Wooden Bedroom Furniture from the People's Republic of China*, A-570-890, Public Document IA/NME/04: PO (Dep't Commerce Feb. 1, 2013), available at: https://access.trade.gov/Resources/frn/summary/prc/2013-02670-1.pdf (import administration decision mem. for the prelim. results of the antidumping duty review)

14. On August 3, 2012, Maoji notified Commerce that it would not respond to Commerce's questionnaire, meaning that entries of wooden bedroom furniture for which Maoji

3

was the exporter, and that were entered during 2011, would not receive a separate antidumping duty rate and would instead be subject to the China-wide rate at the conclusion of Commerce's administrative review. *See id.*

15. A month later, in September 2012, AFI was incorporated.

16. In February 2013, Commerce published its preliminary results for the 2011 period of review in the Federal Register, in which Commerce preliminarily determined that based on Maoji's failure to cooperate, imports for which it was the exporter would be treated as part of the China-wide entity with an antidumping duty rate of 216.01 percent *ad valorem*. *See Wooden Bedroom Furniture From the People's Republic of China,* 78 Fed. Reg. 8,493 (Dep't Commerce Feb. 6, 2013) (prelim. results of antidumping duty admin. review).

I.  **Defendants Divert Assets Away From AFM**

17. On March 19, 2013, U.S. Customs and Border Protection (CBP) processed AFI's submission to establish an importer of record (IOR) number on which AFI listed a residential address belonging to Amy Sivixay as AFI's mailing and physical address.

18. A month later, on April 18, 2013, AFM and AFI executed a Purchase Agreement. Pursuant to the Purchase Agreement, AFI would obtain the assets, operations, intangible property, and perpetual license of AFM without agreeing to assume the liabilities. Amy Sivixay signed the Purchase Agreement on behalf of AFM.

19. The Purchase Agreement also stated that AFI would execute a services contract with AFM stipulating that AFI would continue to use AFM as its sole source of "engineering services relating to the manufacturing of hospitality furniture and furnishings" for five years, and that AFM would not compete in the sale of hospitality furniture and furnishings for a period of five years.

20. In May 2013, immediately after the execution of the Purchase Agreement, AFI began importing wooden bedroom furniture from China under its own name.

21. Not only did AFI carry on the same business as AFM, but it also continued to use AFM's identity, reputation, goodwill, and other intangible assets.

22. For example, despite only being incorporated in 2012, AFI advertised that "[w]ith more than 40 years of experience in the industry, we have developed a deeper understanding of what our client's needs are for their projects."

23. In addition, AFI used AFM's former location, 15830 El Prado Road, Suite A, Chino, CA 91708, as its warehouse.

24. Despite the execution of the Purchase Agreement, members of the Sivixay family, including Amy Sivixay, continued to exercise substantial control over the assets and operations of both AFM and AFI.

25. AFM and AFI employed several members of the Sivixay family, including Brandon Sivixay (Amy Sivixay's brother), Moukum Sivixay, and Outara Jay Sivixay.

26. By 2017, Brandon Sivixay was identified as AFI's Vice President.

27. By 2018, Brandon Sivixay was identified in AFI's filings with the California Secretary of State as a director of AFI, together with Dean Clark, AFI's President, CEO, and sole owner.

28. During 2016, AFI paid a salary to Brandon Sivixay, its Vice President, in excess of the amounts reportedly paid to Dean Clark, its President, CEO, and sole owner.

29. AFM and AFI had other overlapping employees. For instance, Lisa Young, AFM's controller, became the controller of AFI on May 1, 2013.

30. Amy Sivixay and Brandon Sivixay also exercised control over AFI's bank accounts.

## II. Defendants Divert Assets Away From AFI

31. The Purchase Agreement between AFI and AFM stated that AFI would execute a services contract with AFM under which AFM would act as AFI's sole source of engineering services related to hospitality furniture for five years.

32. In reality, Amy Sivixay transferred AFM/AFI's assets to herself through the creation of Hospitality.

33. Amy Sivixay incorporated Hospitality in September 2014.

34. In Hospitality's incorporation documents, Amy Sivixay used her residential address as Hospitality's corporate address.

35. Amy Sivixay served as Hospitality's founder, CEO, CFO, Secretary, and sole director.

36. Instead of making payments to AFM as stated in the Purchase Agreement, AFI instead made payments to Hospitality for "professional services."

37. For example, in 2016, AFI paid Hospitality $45,000 per month for such services, totaling $540,000.

38. Upon information and belief, despite these payments, Hospitality provided no such services to AFI.

39. Hospitality has no public website and there is no indication it is involved in any business activities.

40. Instead, these payments to Hospitality reflected an intent by Defendants to divert funds to Amy Sivixay.

41.     These payments also resulted in the diversion of assets away from AFM and AFI.

### III.     Liquidation of Group I Entries and Duties Owed to the United States

42.     On June 12, 2013, Commerce published its final results in the Federal Register for the 2011 period of review, with its final determinations that Maoji was part of the China-wide entity and assigning a final dumping margin of 216.01 percent to the China-wide entity. *See Wooden Bedroom Furniture From the People's Republic of China*, 78 Fed. Reg. 35,249 (Dep't Commerce June 12, 2013) (final results of antidumping duty admin. review).

43.     In 2013, CBP liquidated the Group I Entries at the 216.01 percent rate determined by Commerce.

44.     The total amount of additional antidumping duties and pre-liquidation interest resulting from liquidation of the Group I Entries that remains unpaid—*i.e.*, the outstanding principal balance of the bills for the Group I Entries—is $2,421,551.35.

45.     No protests were filed concerning the Group I Entries or CBP's liquidations of the Group I Entries.

46.     CBP's assessment of $2,421,551.35 in antidumping duties and pre-liquidation interest pursuant to 19 U.S.C. § 1677g, as well as the applicability of post-liquidation interest pursuant to 19 U.S.C. § 1505(d), not having been timely protested within 180 days of the date of liquidation of the Group I Entries, is final and conclusive pursuant to 19 U.S.C. § 1514(a).

### IV.     Liquidation of Group II Entries and Duties Owed to the United States

47.     Between January 10, 2014, and December 27, 2014, AFI imported wooden bedroom furniture from China through the 33 entries listed in Exhibit B (the Group II Entries).

48. The wooden bedroom furniture in the Group II Entries was subject to antidumping duties pursuant to *Wooden Bedroom Furniture From the People's Republic of China*, 70 Fed. Reg. 329 (Dep't Commerce Jan. 4, 2005) (antidumping duty order).

49. The exporter of the wooden bedroom furniture for the Group II Entries was Shanghai Jian Pu Import and Export Co., Ltd. (Jian Pu).

50. On April 11, 2016, Commerce published the final results of its tenth administrative review of the antidumping duty order on wooden bedroom furniture from China. *Wooden Bedroom Furniture From the People's Republic of China*, 81 Fed. Reg. 21,319 (Dep't Commerce Apr. 11, 2016) (final results of admin. review). Commerce's rate determination for exports by Jian Pu was litigated, resulting in injunctions of liquidation of subject entries for a period of time. *See Am. Furniture Mfrs. Comm. for Legal Trade, et al. v. United States*, Court No. 16-00070, Slip. Op. 2015-25 (Ct. Int'l Tr. March 13, 2017).

51. In an action filed by AFI in this Court involving different entries AFI made during the same 2014 period of review from exporter Jian Pu, this Court determined that CBP could timely liquidate subject entries until November 30, 2017. *Aspects Furniture Int'l, Inc. v. United States*, 510 F. Supp. 3d 1353, 1369-1372 (Ct. Int'l Tr. 2021). This Court also upheld liquidations made within 90-days thereafter. *Id.* at 1373-75 (citing 19 U.S.C. § 1501). The Federal Circuit affirmed this decision. *Aspects Furniture Int'l, Inc. v. United States*, 42 F.4th 1366 (Fed. Cir. 2022).

52. CBP liquidated 29 of the Group II Entries on November 24, 2017, and liquidated 4 of the Group II Entries on December 1, 2017.

53. The total amount of additional antidumping duties and pre-liquidation interest resulting from liquidation of the Group II Entries that remains unpaid—*i.e.*, the outstanding principal balance of the bills for the Group II Entries—is $1,485,421.79.

54. AFI filed protest numbers 520118100100, 520118100098, 270418100791, 270418100740, 180318100004, and 170318100139 in connection with the Group II Entries. These protests challenged the timeliness of CBP's liquidations, advancing the same arguments that were ultimately rejected in *Aspects Furniture Int'l, Inc. v. United States*, 510 F. Supp. 3d 1353, 1369-1372 (Ct. Int'l Tr. 2021), *aff'd at* 42 F.4th 1366 (Fed. Cir. 2022). CBP denied each of these protests.

55. AFI did not file any actions in this Court contesting CBP's denials of its protests associated with the Group II Entries within 180 days of such protest denials.

56. CBP's assessment of $1,485,421.79 in antidumping duties and pre-liquidation interest pursuant to 19 U.S.C. § 1677g, as well as the applicability of post-liquidation interest pursuant to 19 U.S.C. § 1505(d), not having been timely challenged in this Court within 180 days of CBP's denial of each of its protests, is final and conclusive pursuant to 19 U.S.C. § 1514(a).

V. **Liquidation of Group III Entries and Duties Owed to the United States**

57. Between September 2, 2016, and May 30, 2017, AFI imported wooden bedroom furniture from China through the 21 entries listed in Exhibit C (the Group III Entries).

58. The wooden bedroom furniture in the Group III Entries was subject to antidumping duties pursuant to *Wooden Bedroom Furniture From the People's Republic of China*, 70 Fed. Reg. 329 (Dep't Commerce Jan. 4, 2005) (antidumping duty order).

59. CBP liquidated each of the Group III Entries on December 1, 2023.

60. The total amount of additional antidumping duties and pre-liquidation

interest resulting from liquidation of the Group III Entries that remains unpaid—*i.e.*, the outstanding principal balance of the bills for the Group III Entries—is $3,766,585.01.

61. AFI filed protest number 270424170106 in connection with the Group III Entries. In its protest, AFI argued that it should have received the 0.00% rate applicable to wooden bedroom furniture supplied by Wuxi Yushea—a position that was rejected by this Court in *Aspects Furniture Int'l, Inc. v. United States*, 651 F. Supp. 3d 1328 (Ct. Int'l Tr. 2023). CBP denied AFI's protest.

62. AFI did not file an action in this Court contesting CBP's denial of its protest associated with the Group III Entries within 180 days of the protest denial.

63. CBP's assessment of $3,766,585.01 in antidumping duties and pre-liquidation interest pursuant to 19 U.S.C. § 1677g, as well as the applicability of post-liquidation interest pursuant to 19 U.S.C. § 1505(d), not having been timely challenged in this Court within 180 days of CBP's denial of its protest, is final and conclusive under 19 U.S.C. § 1514(a).

## COUNT ONE
*AFM Is Liable for Duties Assessed On Group I Entries As The Importer Of Record*

64. The allegations contained in paragraphs 1 through 63 are restated and incorporated herein by reference.

65. The total unpaid amount of additional antidumping duties and pre-liquidation interest resulting from liquidation of the Group I Entries—*i.e.*, the outstanding principal balance of the bills for the Group I Entries—is $2,421,551.35.

66. As to each of the Group I Entries, CBP issued bills to AFM for unpaid amounts assessed at liquidation. Exhibit A identifies the bill number associated with each of the 45 Group I Entries, the date the initial bill for each entry was issued, and the current unpaid principal amount for each of these bills.

10

67. CBP has notified AFM of the unpaid amounts owed in connection with the Group I Entries, including the continuing accrual of post-liquidation interest pursuant to 19 U.S.C. § 1505(d), on a monthly basis.

68. AFM has refused to pay the outstanding debt for these bills.

69. As importer of record, AFM is liable for the unpaid antidumping duties and pre-liquidation interest assessed at liquidation on the 45 Group I Entries, the outstanding principal balance for which totals $2,421,551.35 as reflected by the outstanding duty bills identified in Exhibit A. *See* 19 U.S.C. §§ 1500-1505, 19 U.S.C. § 1514, 19 U.S.C. § 1673; 19 C.F.R. § 141.1(b)(1).

70. AFM is also liable for pre- and post-judgment interest on the unpaid duty bills for the Group I Entries, including but not limited to interest pursuant to 19 U.S.C. § 1505.

## COUNT TWO
### *AFI Is Liable For Duties Assessed on Group II Entities As The Importer Of Record*

71. The allegations contained in paragraphs 1 through 70 are restated and incorporated herein by reference.

72. The total unpaid amount of additional antidumping duties and pre-liquidation interest resulting from liquidation of the Group II Entries—*i.e.*, the outstanding principal balance of the bills for the Group II Entries—is $1,485,421.79.

73. As to each of the Group II Entries, CBP issued written bills to AFI for unpaid amounts assessed at liquidation. Exhibit B identifies the bill number associated with each of the 33 Group II Entries, the date the initial bill for each entry was issued, and the current unpaid principal amount for each of these bills.

74. CBP has notified AFI of the unpaid amounts owed in connection with the Group II Entries, including the continuing accrual of post-liquidation interest pursuant to 19 U.S.C. § 1505(d), on a monthly basis.

75. AFI has refused to pay the outstanding debt for these bills.

76. As importer of record, AFI is liable for the unpaid antidumping duties and pre-liquidation interest assessed at liquidation on the 33 Group II Entries, the outstanding principal balance for which totals $1,485,421.79 as reflected by the outstanding duty bills identified in Exhibit B.  *See* 19 U.S.C. §§ 1500-1505, 19 U.S.C. § 1514, 19 U.S.C. § 1673; 19 C.F.R. § 141.1(b)(1).

77. AFI is also liable for pre- and post-judgment interest on the unpaid duty bills for the Group II Entries, including but not limited to interest pursuant to 19 U.S.C. § 1505.

## COUNT THREE
*AFI Is Liable For Duties Assessed on Group III Entries As The Importer Of Record*

78. The allegations contained in paragraphs 1 through 77 are restated and incorporated herein by reference.

79. The total unpaid amount of additional antidumping duties and pre-liquidation interest resulting from liquidation of the Group III Entries—*i.e.*, the outstanding principal balance of the bills for the Group II Entries—is $3,766,585.01.

80. As to each of the Group III Entries, CBP issued written bills to AFI for unpaid amounts assessed at liquidation.  Exhibit C identifies the bill number associated with each of the 21 Group III Entries, the date the initial bill for each entry was issued, and the current unpaid principal amount for each of these bills.

81. CBP has notified AFI of the unpaid amounts owed in connection with the Group III Entries, including the continuing accrual of post-liquidation interest pursuant to 19 U.S.C. § 1505(d), on a monthly basis.

82. AFI has refused to pay the outstanding debt for these bills.

83. As importer of record, AFI is liable for the unpaid antidumping duties and pre-liquidation interest assessed at liquidation on the 21 Group III Entries, the outstanding principal balance for which totals $3,766,585.01 as reflected by the outstanding duty bills identified in Exhibit C.  *See* 19 U.S.C. §§ 1500-1505, 19 U.S.C. § 1514, 19 U.S.C. § 1673; 19 C.F.R. § 141.1(b)(1).

84. AFI is also liable for pre- and post-judgment interest on the unpaid duty bills for the Group III Entries, including but not limited to interest pursuant to 19 U.S.C. § 1505.

## COUNT FOUR
*AFI Is Liable For Duties Assessed On Group I Entries as AFM's Successor-In-Interest*

85. The allegations contained in paragraphs 1 through 84 are restated and incorporated herein by reference.

86. Federal common law provides "that a successor entity may be responsible for its predecessor's debts when '(1) there is an express or implied agreement to assume past debts, (2) the change in corporate form constitutes a de facto merger, (3) the successor is a mere continuation of its predecessor, or (4) the change in corporate form was motivated by the intent to defraud creditors.'"  *United States v. Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113, 1140 (Ct. Int'l Trade 2017) (quoting *United States v. Ataka Am., Inc.*, 826 F. Supp. 495, 498 (Ct. Int'l Trade 1993)).

87. AFI is a successor-in-interest to AFM because AFI is a mere continuation of AFM.

88. AFI continued to engage in the same import business of wooden bedroom furniture from China as AFM and holds itself out as the continuation of AFM.

89. AFI has shared overlapping addresses, management, employees (including members of the Sivixay family), lines of business, assets, identity, reputation, goodwill, manufacturing processes, manufacturing relationships, and intangible assets of AFM.

90. AFI traded on AFM's intangible assets, including by advertising the company's four-decade experience in the importation of hospitality furniture.

91. AFI continued a financing agreement AFM had with JP Morgan Chase Bank—which had created a security interest in AFM's assets—even though AFM had purportedly sold all of its assets and was no longer operational.

92. AFI is therefore a mere continuation of AFM and is liable for the duties owed on Group I entries as AFM's successor-in-interest.

93. AFI is also a successor-in-interest to AFM because the Purchase Agreement between AFI and AFM was motivated by the intent to defraud creditors.

94. Defendants attempted to shield the assets of AFM through the operation of the Purchase Agreement, which transferred all of AFM's assets to AFI.

95. Defendants completed the Purchase Agreement immediately after Commerce's preliminary results indicated AFM would be liable for an over 200 percent increase in duties.

96. Members of the Sivixay family were on both sides of the Purchase Agreement transaction. Amy Sivixay signed the Purchase Agreement on behalf of AFM, and AFI provided the residential address of Amy Sivixay to CBP when obtaining an IOR. In addition, Amy Sivixay's brother, Brandon Sivixay, was a director of AFI, and Lisa Young, AFM's controller, also served as AFI's controller.

97. The Purchase Agreement left AFM without assets.

98. While the Purchase Agreement states that AFI would pay AFM $150,000 in cash plus a note for an additional $194,745 to be paid in twelve monthly installments via bulk escrow company Peoples Escrow, Inc. (Peoples Escrow), instructions were given to People's Escrow in September 2013 to "reduce seller's funds by $194,745 and credit said amount to buyer for seller carry back on subject property reflecting Note and Deed handled outside of escrow."

99. In other words, upon information and belief, the $194,745 did not move from AFI to AFM through Peoples Escrow, indicating the possibility that no actual funds changed hands as part of this so-called transaction.

100. In addition, while the Purchase Agreement provided that AFI would continue to pay AFM for "hospitality" services, AFM never received these payments; instead, AFI began paying significant funds to Hospitality.

101. AFI, as AFM's successor-in-interest, is therefore liable for AFM's debts with respect to the Group I entries.

## COUNT FIVE
### *Amy Sivixay Is Personally Liable for Duties Assessed On The Group I, Group II, and Group III Entries Under a Veil-Piercing And/Or Alter Ego Theory*

102. The allegations contained in paragraphs 1 through 101 are restated and incorporated herein by reference.

103. Amy Sivixay is personally liable for the duties owed on the Group I, Group II, and Group III entries to the same extent as AFM and AFI under a veil-piercing and/or alter ego theory. *See, e.g.*, *Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1264 (Fed. Cir. 1985) (citing 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 41.35).

104. Amy Sivixay was the principal organizer of the actions taken by Defendants to avoid paying significant duties to CBP.

105. Amy Sivixay served as AFM's President, CEO, CFO, Secretary, registered agent, and sole director, as well as Hospitality's President, CEO, CFO, Secretary, and sole director.

106. Amy Sivixay orchestrated the Purchase Agreement between AFM and AFI.

107. Amy Sivixay's residential address was used in establishing AFI's IOR, which was necessary for AFI to continue AFM's importing business after the asset sale.

108. Amy Sivixay executed an agreement transferring AFM's assets to AFI with a contractual requirement that AFM would continue to serve as AFI's sole source of engineering services for five years. Instead of providing those services through AFM, Amy Sivixay incorporated Hospitality. Significant assets of AFM/AFI were then diverted to Hospitality, and AFM and AFI have failed to pay their debts to the United States for the Group I, II, and III Entries.

109. Amy Sivixay registered Hospitality using the address of a residential property she owned, listed its address on the same road in Chino Hills, California, as AFI's registered address, and served as its CEO, CFO, Secretary, sole director, and President.

110. Despite receiving fees from AFI for "professional services," Hospitality has no website or publicly advertised corporate identity or reputation.

111. Amy Sivixay therefore not only orchestrated the sale of AFM's assets to AFI, but she also established a separate company—Hospitality—to receive the fees contractually meant for AFM such that AFM remained insolvent.

112. Insistence on the corporate form is fundamentally unfair and contrary to the public interest because it would enable AFM and AFI to avoid legal liability for payment of

antidumping duties while allowing Amy Sivixay to enrich herself with money legally owed to the United States.

113. AFM and AFI disregarded corporate formalities including, but not limited to, failing to consistently file Statements of Information with the California Secretary of State.

114. AFM and AFI failed to maintain adequate capitalization as a result of the Purchase Agreement and the Hospitality professional services contract.

115. Amy Sivixay exercised dominant control over the activities of AFM, AFI, and Hospitality.

116. Amy Sivixay directed the sale of all of AFM's assets—including its intangible property and a perpetual license to use its name—to AFI.

117. AFI used Amy Sivixay's residential address when creating its IOR with CBP.

118. AFM and AFI employed several of Amy Sivixay's family, including her brother Brandon Sivixay.

119. By 2018, Brandon Sivixay was identified as AFI's Vice President and Director and paid a higher salary than AFI's purported President, Dean Clark.

120. Amy Sivixay continued to exercise control over AFI's bank accounts through at least 2023.

121. Amy Sivixay diverted AFI's corporate funds to herself through her corporation Hospitality.

122. Amy Sivixay is accordingly personally liable to the United States to the same extent as both AFM and AFI under a veil-piercing and/or alter ego theory.

## COUNT SIX
*Hospitality Is Liable for Duties Assessed On The Group I, Group II, and Group III Entries Under a Veil-Piercing And/Or Alter Ego Theory*

123.    The allegations contained in paragraphs 1 through 122 are restated and incorporated herein by reference.

124.    Hospitality is liable for the duties owed on the Group I, Group II, and Group III entries to the same extent as AFM, AFI, and Amy Sivixay under a veil-piercing and/or alter ego theory.

125.    Hospitality is a company created by Amy Sivixay to divert funds from AFM and AFI.

126.    Upon information and belief, Hospitality conducts no business other than the so-called "professional services" it provides to AFI.

127.    Hospitality has no website or publicly advertised corporate identity or reputation.

128.    Amy Sivixay registered Hospitality, used the address of a residential property she owned, listed its address on the same road in Chino Hills, California, as AFI's registered address, and served as its CEO, CFO, Secretary, sole director, and President.

129.    Disregarding the separate corporate existences between Hospitality, AFM, and AFI prevents injustice and furthers public policy because it is necessary to prevent AFM and AFI from evading payment of antidumping duties to the United States.

130.    Likewise, disregarding the corporate existence of Hospitality is necessary because it is merely an alter ego of Amy Sivixay.

131.    Hospitality is accordingly liable to the United States to the same extent as AFM, AFI, and Amy Sivixay under a veil-piercing and/or alter ego theory.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests that this Court grant judgment in its favor and hold Defendants jointly and severally liable for $7,673,558.15 in unpaid antidumping duties and pre-liquidation interest, plus additional pre- and post-judgment interest, including but not limited to interest pursuant to 19 U.S.C. § 1505(d), and such other and further relief as may be just and appropriate.

**JURY TRIAL DEMAND**

Pursuant to Rule 38 of the United States Court of International Trade, the United States demands a trial by jury as to all issues so triable.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
Justin R. Miller
Attorney-In-Charge
International Trade Field Office

Of Counsel:
SUZANNA HARTZELL-BALLARD
Senior Attorney
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection
8899 E. 56th Street
Indianapolis, Indiana 46249

/s/ Nico Gurian
NICO GURIAN
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264–9241 or 0583
*Attorneys for Plaintiff*
*United States of America*

Dated: May 15, 2025